UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                     :
ELAINE E. SCATTERGOOD,               :
                                     :          Civil Action No.
                  Plaintiff,         :          06-3941 (NLH)
     v.                              :
                                     :
LAWRENCE KENNEY and AVALON           :             **OPINION**
POLICE,                              :
                  Defendants.        :
_____     :

**APPEARANCES:**

ELAINE E. SCATTERGOOD
75 30TH STREET
AVALON, NJ 08202
*Pro Se Plaintiff*

JAMES P. SAVIO
LAW OFFICES OF JAMES P. SAVIO
9220 AMHERST AVENUE
PO BOX 3163
MARGATE, NJ 08402
*Attorney for Defendants*

**HILLMAN, District Judge**

     Pro se plaintiff, Elaine Scattergood, filed a complaint
against Police Officer Lawrence Kenney and the Avalon Police
Department in Avalon, New Jersey pursuant to 42 U.S.C. §§ 1983,
1985 and 1986.  She alleges that defendants conspired against her
to deprive her of her civil rights through harassment,
intimidation and false arrest and requests damages in the amount
of four million dollars.  Because Officer Lawrence Kenney is
entitled to qualified immunity, his motion for summary judgment
is granted.  Also, because the "Avalon Police" is not a proper

defendant and there is not a cognizable cause of action against any municipality, "Avalon Police" is dismissed.  Finally, since there is no determination that plaintiff filed a frivolous or groundless complaint, defendants' motion for an award of counsel fees under 42 U.S.C. § 1988 is denied.  _____

## I.   **JURISDICTION**

This Court exercises jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

## II.   **BACKGROUND**

This matter arises out of a dispute between plaintiff and her tenant, Ms. Katrina Shuptar.  Ms. Shuptar and Ms. Scattergood entered into an agreement for the rental of Ms. Scattergood's residential property located in Avalon, New Jersey ("the rental property").  Ms. Shuptar rented the property during the summer of 2004 for the Fourth of July holiday and for three weeks in August.  The relationship between Ms. Scattergood and her tenant deteriorated quickly and resulted in both women ultimately filing criminal complaints against the other.

Ms. Scattergood alleges in her complaint that she notified Ms. Shuptar that she would be entering the rental property in order to allow workmen to level a new refrigerator and remove the old refrigerator and place it in the garage.  She states that Officer Kenney along with another police officer walked up to her

and threatened her with arrest if she set foot on the rental property.  This appears to have occurred on August 16, 2004. She also alleges that she attempted to speak to her tenant on that day about furniture that had been repaired and that she was charged with harassment.  She states that as a result of the actions of Officer Kenney she has suffered "humiliation, consternation and distress."

According to the affidavit filed by Officer Kenney, and not disputed by plaintiff, earlier that day on August 16, 2004, both women contacted the police about their concerns over each other. Officer Kenney states he first met with Ms. Scattergood and she made a number of complaints about Ms. Shuptar.  He states that Ms. Scattergood stated that she had the right to stay in the garage at the rental property because it was not included in the lease, and that she had the right to enter the rental property at any time.  Officer Kenney further states that after meeting with Ms. Scattergood, Ms. Shuptar came into police headquarters to complain about Ms. Scattergood walking into the rental property unannounced, removing outside light bulbs and occupying the garage at the rental property.  He states that Ms. Shuptar told him her family was afraid to stay at the property because of Ms. Scattergood's actions.  Officer Kenney states that he told Ms. Shuptar she could file a criminal complaint but that Ms. Shuptar did not want to do so at that time and instead requested that

3

Officer Kenney try to reason with Ms. Scattergood.

After meeting with Ms. Shuptar, Officer Kenney states he received a phone call from her advising him that Ms. Scattergood was again in the garage at the rental property.  Officer Kenney went to the rental property with Paul Short, a Construction Code official employed by the Borough of Avalon.  He states he told Ms. Scattergood that Ms. Shuptar had the right to file a complaint against her for trespass.  According to Officer Kenney, Ms. Scattergood maintained that she had a right to be in the garage and that she wanted to clean the refrigerator located in the garage.  Officer Kenney states that he mediated an agreement between the two women to allow Ms. Scattergood to stay in the garage to finish cleaning the refrigerator as long as Ms. Scattergood left within two hours or sooner.

The next day, on August 17, 2004, Ms. Shuptar filed an incident report with the Avalon Police Department.  This report was filled out by Patrolman J. Gaughan.  According to the report, Ms. Shuptar came into the station to provide an update on her previous report of a wallet missing from the rental property.  Ms. Shuptar also recounted several incidents that she described as "strange and unusual" involving Ms. Scattergood, including an allegation that Ms. Scattergood had been letting herself into the

home at will since there were no locks on the doors.[1]

According to Officer Kenney's affidavit, Ms. Shuptar returned to the police department on August 20, 2004, and was "visibly shaking."  Ms. Shuptar complained that Ms. Scattergood was watching and circling the rental property with her automobile, and that Ms. Scattergood had followed her to a pizza parlor in Avalon.  Ms. Shuptar filed a complaint at that time against Ms. Scattergood charging her with harassment, a petty disorderly persons offense in violation of N.J.S.A. 2C:33-4c. The complaint states that probable cause was found for the issuance of the complaint and was signed by the Court Administrator, Mary Monks.

Although Ms. Scattergood denies Ms. Shuptar's allegations regarding her "watching and circling" the rental property, she states in her opposition to defendants' motion for summary judgment that she would have knocked on her tenants' door but for the "threat" of Officer Kenney to have her arrested if she set foot on the property.  She also states in her opposition that Mary Monk told her that "she did not want to take [Shuptar's] complaint, but that Kenney insisted."

On September 24, 2004, Ms. Scattergood filed a complaint

---

[1]   Patrolman Gaughan writes in the report that he contacted "Avalon Construction Official Paul Short" and was advised that the last time a valid rental license was issued for the rental property was in 1999 and that no fire inspection had been conducted for 2004.

against Ms. Shuptar for harassment in violation of N.J.S.A.
2C:33-4c, signed by Mary Monk upon a finding of probable cause.[2]

### III.  DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied
that "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56.

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;

---

[2]  Both complaints were subsequently dismissed following a
mediation and hearing held in Municipal Court in the Borough of
Avalon, New Jersey on December 13, 2004.  During that same
hearing, Ms. Scattergood, through her counsel, entered a guilty
plea for failure to obtain a rental license, and paid a fine and
court costs.

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.  Qualified Immunity**

We first address defendant Kenney's argument that summary judgment should be decided in his favor because he is immune under the affirmative defense of qualified immunity. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (stating that because qualified immunity is "an immunity from suit rather than a mere defense to liability ... we repeatedly have stressed the importance of resolving immunity questions at the earliest

possible stage in litigation.").  In determining whether law

enforcement officers are entitled to the defense of qualified

immunity, the standard promulgated by the Third Circuit is as

follows:

> Qualified immunity protects law enforcement
> officers from being tried for actions taken in the
> course of their duties.  If the immunity applies,
> it entitles the officer to be free of the 'burdens
> of litigation.' But the immunity is forfeited if
> an officer's conduct violates 'clearly established
> statutory or constitutional rights of which a
> reasonable person would have known.' To determine
> ... whether the officers have lost their immunity,
> we must engage in a two step analysis. First, we
> must decide 'whether a constitutional right would
> have been violated on the facts alleged'...
> Second, if we believe that a constitutional
> violation did occur, we must consider whether the
> right was 'clearly established.'  The question is
> 'whether it would be clear to a reasonable officer
> that his conduct was unlawful in the situation he
> confronted.' This is an objective inquiry, to be
> decided by the court as a matter of law.

Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004) (internal

citations omitted).  Thus, in order to determine whether

plaintiff's claims against Officer Kenney is viable, it must

first be determined whether he violated plaintiff's

constitutional rights.  Then, if a constitutional right has been

infringed, it must be determined whether that right was "clearly

established" at the time of the constitutional violation.  Id.

Although plaintiff brings claims pursuant to 42 U.S.C. §§

1983, 1985 and 1986, she does not allege what constitutional

right or federal law has been violated.[3]  See Doe v. Delie, 257
F.3d 309, 314 (3d Cir. 2001) (stating § 1983 does not create any
substantive rights; it only provides a remedy for the violation
of a federal constitutional or statutory right conferred
elsewhere)(citations omitted).  A review of plaintiff's

---

[3]  "Title 42 U.S.C. § 1983 confers a private federal right
of action for damages and injunctive relief against state actors
who deprive any citizen or person within the jurisdiction of the
United States of 'rights, privileges, or immunities secured by
the Constitution and laws.'" Burnett v. Gratan, 468 U.S. 42, 45
n.3 (1984).  To state a claim under 42 U.S.C. § 1983, the
plaintiff must show that: (1) the conduct complained of was
committed by a person acting under color of state law; and (2)
that the conduct deprived him of his rights, privileges, or
immunities secured by the Constitution or laws of the United
States.  See, e.g., Shuman ex rel. Shertzer v. Penn Manor School
Dist., 422 F.3d 141, 146 (3d Cir. 2005)(citing Mark v. Borough of
Hatboro, 51 F.3d 1137, 1141 (3d Cir.1995); citing Moore v.
Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

"Title 42 U.S.C. § 1985(3) creates a private right of action
for damages for injury or deprivation caused by a conspirator to
deprive 'any person or class of persons of the equal protection
of the laws, or of equal privileges and immunities under the
laws.'" Burnett, 468 U.S. at 45 n.4.  In order to bring a claim
pursuant to 42 U.S.C. § 1985, plaintiff must be able to show that
two or more people have conspired to deprive her of the equal
protection of the laws.  See 42 U.S.C. § 1985(3).

"Title 42 U.S.C. § 1986 creates a right to recover damages
'in an action on the case' brought within one year after the
cause of action has accrued against every person who has
knowledge of, and power to prevent, a § 1985 conspiracy, but
neglects or refuses to act." Burnett, 468 U.S. at 45 n.5.  The
failure to establish any right to relief under 42 U.S.C. § 1985
justifies the dismissal of the dependent cause of action under 42
U.S.C. 1986 . See Dowsey v. Wilkins, 467 F.2d 1022, 1026 (5th
Cir. 1972); Armstrong v. School District, 597 F.Supp. 1309, 1314
(E.D.Pa. 1984).

allegations in the light most favorable to her[4] does not establish a violation of the constitution or other federal law.

The clearest allegation of a constitutional deprivation is Officer Kenney's involvement, however tangential, in the criminal complaint filed by Ms. Shuptar.  We assume for this analysis that a police officer, acting under color of law, may commit a constitutional tort by facilitating or encouraging the filing of an improper criminal complaint by a private citizen.  Cf., McIntyre v. U.S., 336 F. Supp. 2d 87, 102 (D. Mass. 2004)(when a government actor participates in conduct of private actors that would violate the constitution if the conduct were solely that of the government actor, the conduct is government action for purposes of analyzing whether a constitutional violation has occurred).  However, there is no evidence to suggest that the criminal complaint for harassment - filed by Ms. Shuptar based on her observations that Ms. Scattergood was watching and circling the rental property - was the result of any unconstitutional action by Officer Kenney or for that matter was otherwise

---

[4]  See Estelle v. Gamble, 429 U.S. 97, 107 (1976) (recognizing that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotations omitted).

procedurally or substantively defective.[5]

Officer Kenney states in his affidavit that he never suggested or forced Ms. Shuptar to sign the complaint.  He states he only advised Ms. Shuptar that she had the right to file such a complaint.  Ms. Shuptar testified in deposition that it was her decision to file the complaint and that neither Officer Kenney nor anyone at the Avalon Police Department forced her to do anything.  Although Ms. Scattergood alleges in her opposition that Mary Monk told her that Officer Kenney insisted that Ms. Shuptar file the complaint, she has not provided any evidence in support of her allegation.[6]  See Saldana, 260 F.3d at 232 (finding that party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague

---

[5] While we note that the complaint against the plaintiff was ultimately dismissed, the same fate awaited the plaintiff's similar complaint against Ms. Shuptar.  The record suggests that the complaints were dismissed because cooler heads ultimately prevailed and the case was downgraded to the landlord/tenant dispute it ultimately is and not because Ms. Shuptar's complaint was lacking in probable cause.  In any event, plaintiff has offered no proof that Ms. Shuptar's complaint was defective in that way.  The only possible evidence offered by plaintiff are statements by neighbors attending to her good character.  These statements have little or no bearing on whether Ms. Shuptar was justified in feeling harassed.  In any event, they in no way serve to suggest that Officer Kenney had any reason to doubt Ms. Shuptar's complaint.

[6] In fact, undisputed facts undermine the allegation.  It appears uncontroverted that Officer Kenney first tried to mediate the dispute after convincing Ms. Shuptar not to file a criminal complaint alleging trespassing when the plaintiff visited the property's garage on August 17, 2004, without permission.  Kenney Certification ¶ 6.

statements).  Since it appears un-controverted that Ms. Shuptar, of her own volition, instituted the criminal complaint against the plaintiff and that it was lawful for her to do so, it is difficult to conceive how Officer Kenney took any action at all, much less action in violation of plaintiff's constitutional rights. [7]  Absent a meaningful affirmative act attributable to Officer Kenney, plaintiff has failed to prove an act taken under color of state law.  Plaintiff has no cause of action under 42 U.S.C. § 1983 for acts undertaken purely by a private citizen.

---

[7] Even if plaintiff had secured an affidavit from Ms. Monk, taken her deposition or otherwise provided an evidentiary basis for the allegations of the complaint, defendant would still be entitled to summary judgment because Monk's statement does not create a genuine issue of material fact.  As a law enforcement officer, Kenney had the personal authority to issue a summons on a complaint and does not have to instruct a citizen to do so. N.J.Ct.R. 7:2-2 (a)(2) states:

> A summons on a complaint made by a law enforcement officer charging any offense may be issued by a law enforcement officer or by any person authorized to do so by statute without a finding by a judicial officer of probable cause for issuance.  A law enforcement officer may personally serve the summons on the defendant without making a custodial arrest.

Accordingly, assuming that Officer Kenney had no reason to doubt the veracity and sincerity of Ms. Shuptar and that in his view her statement supported a charge of harassment, he had the legal authority to charge the plaintiff himself.  If he had the legal authority to do so himself, as did Ms. Shuptar, his act of simply encouraging her to take the lawful step of swearing out the complaint can hardly be a constitutional tort, even one couched in conspiracy.  See Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d. Cir. 1993)(to establish conspiracy to violate a constitutional right plaintiff must allege state actor agreed with private actor to violate plaintiff's rights).

See <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 184 (3d. Cir. 1993)(individual alleging a § 1983 violation must show private party acted under color of state law).

Plaintiff's other allegations are similarly unavailing.  At best, plaintiff has alleged that Officer Kenney told her that he could arrest her for trespassing.  However, Ms. Scattergood has not alleged that she was actually arrested, taken into custody or detained in any way.  Thus, there was no Fourth Amendment "seizure."  See <u>U.S. v. Williams</u>, 413 F.3d 347, 353 (3d Cir. 2005)(finding no seizure where police officer without reasonable suspicion approached individual sitting in his vehicle to question him).  Rather, Officer Kenney brokered a mediation whereby Ms. Scattergood was allowed to enter the garage to clean the refrigerator.

Given Ms. Shuptar's repeated complaints about Ms. Scattergood's unauthorized entry into the rental property, and Ms. Scattergood's statement to Officer Kenney that she felt she was allowed to enter the rental property during the time it was leased to and possessed by the Shuptars, Officer Kenney's advice that Ms. Scattergood could be arrested for trespassing, or that she would be arrested if she continued to engage in such behavior, is not unreasonable.  See 49 Am. Jur. 2d Landlord and Tenant § 437 (2007) (stating "[a]n unauthorized entry or intrusion by the landlord constitutes a trespass to the same

extent as an entry or intrusion by a stranger, and the tenant may maintain an action of trespass against a landlord as well as against any other wrongdoer."); see generally, Lynn v. Christner, 184 Fed. Appx. 180, 183 (3d Cir. 2006)(finding that probable cause to arrest "exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested")(citing United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)).

Even if we could somehow piece together a possible federal violation, that violation must be "clearly established" before defendants forfeit their immunity. See Doe, 361 F.3d at 238. The fact that plaintiff has not identified or even described a potential federal violation shows that it was not "clearly established" so as to be clear to Officer Kenney that his conduct was unlawful in the situation he confronted. See id. Thus, Officer Kenney has not violated plaintiff's constitutional rights and is therefore entitled to qualified immunity.

The remaining facts in this case all center around plaintiff's dispute with her tenant, Ms. Shuptar. Ms. Shuptar is not a defendant in this case and the problems Ms. Scattergood may have experienced as a result of that relationship are not directly relevant to the issue here which is whether Officer

14

Kenney violated any of her federal rights.  Taking all reasonable inferences in the light most favorable to plaintiff, Ms. Scattergood has failed to identify any potential violation of her federal rights by Officer Kenney.[8]

### C.  Avalon Police

Although plaintiff named "Avalon Police," as a defendant, it is not a proper defendant.  <u>See</u> <u>Nance v. City of Newark</u>, No. 97-CV-6148, 2007 WL 1695968, at *8 (D.N.J. June 11, 2007) (dismissing plaintiff's federal claims against Newark Police Department because one cannot bring a § 1983 claim against a municipal police department).  "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." <u>Padilla v. Township of Cherry Hill</u>, 110 Fed. Appx. 272, 278 (3d Cir. 2004) (quoting <u>DeBellis v. Kulp</u>, 166 F. Supp. 2d 255, 264 (E.D.Pa. 2001); see, N.J.S.A. 40A:14-118 (providing that New Jersey police departments are a creation of municipal government).  Only Officer Kenney answered the complaint and the

---

[8]  Ms. Scattergood's argument that this case should not be dismissed because only a jury could discover the truth and because she was not present during Ms. Shuptar's deposition or given an opportunity to cross-examine Officer Kenney is to no avail.  Ms. Scattergood was provided with notice of Ms. Shuptar's deposition and failed to appear.  She did not request to depose Officer Kenney.

docket does not reflect that plaintiff served the municipality or township.  Even if, given the liberal pleading requirements for a pro se plaintiff, the municipality was the intended defendant, plaintiff has proffered no facts that could allow a fact finder to conclude that a policy or custom of the municipality caused a constitutional injury.  See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993)(finding municipality liable only if policy or custom caused the constitutional injury); Watson v. Abington Township, 478 F.3d 144, 155 (3d Cir. 2007) (stating that liability for § 1983 must be founded upon evidence that the government supported a violation of constitutional rights) (citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691-95 (1978)).[9]  Therefore, "Avalon Police" is dismissed.

**D.  Defendants' Request for An Award of Attorneys Fees**

Under 42 U.S.C. § 1988, the Court is permitted to award attorney's fees to the "prevailing party" in suits brought under the federal civil rights statutes.  See Charles v. D'Angelo, 27 Fed. Appx. 141, 142 (3d Cir. 2002).  "The district courts have been given discretion to decide whether, in their judgment, a plaintiff's claim was frivolous or groundless." Id.

---

[9]  Since this case is dismissed based on the merits, we do not address defendants' argument that plaintiff's claims are barred by the statute of limitations.

Although plaintiff does not prevail in her litigation, we do not find that plaintiff's claims were so frivolous or groundless as to justify imposing attorneys' fees or costs. We also see no evidence that plaintiff brought her action in bad faith. Therefore, defendants' request for attorneys' fees is denied.


**IV.  CONCLUSION**

For the reasons expressed above, defendants' motion for summary judgment is granted. An Order consistent with this Opinion will be entered.

        s/Noel L. Hillman
        NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey